UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS INDUSTRIAL & MECHANICAL CONTRACTORS, LLC | * | CIVIL ACTION |
| | * | NO. 20-1102 |
| VERSUS | | |
| | * | SECTION "R" (2) |
| JEFFREY JUSTICE, ET AL. | | |

**ORDER AND REASONS**

The Motion to Quash Subponeas Duces Tecum (ECF No. 26) and Motion to Quash Rule 30(b)(6) Notice of Deposition (ECF No. 30) filed by Defendants Jeffrey Justice, Sandra Justice, Lamar Kerry Davis and Advanced Industrial & Mechanical, LLC are pending before me in this matter. Plaintiff Thomas Industrial & Mechanical Contractors, LLC ("Thomas Industrial") filed timely Opposition Memoranda. ECF Nos. 39, 40. Having considered the record, the submissions and arguments of counsel, and the applicable law, IT IS ORDERED that Defendants' motions are GRANTED IN PART AN DENIED IN PART for the reasons stated herein.

**I.   BACKGROUND**

Defendants Jeffrey Justice, Sandra Justice and Lamar Kerry Davis worked for Plaintiff Thomas Industrial until their termination on March 8, 2019. ECF No. 21, ¶ 21, at 5. Plaintiff alleges that, while in its employ, Defendants formed a competing company (Defendant Advanced Industrial & Mechanical, LLC ("Advanced Industrial")) and engaged in fraud, misrepresentation, deception, and other unethical conduct and diverted business opportunities from Plaintiff to Advanced Industrial. *Id.* ¶ 15, at 4. Plaintiff asserts claims for unfair trade practices, conversion, breach of contract and breach of fiduciary duty. *Id.* ¶¶ 13–42, at 3–11. Plaintiff contends that, among other things, Defendants falsely represented to Plaintiff's customers that Advanced Industrial was Plaintiff's subsidiary, altered Plaintiff's Certificate of Liability Insurance to reflect

1

the insurance was in favor of Advanced Industrial, contracted with Plaintiff's customers on behalf of Advanced Industrial, charged Plaintiff for time spent working on Advanced Industrial matters (*id.* ¶ 22, at 5–6), and that they stole and used Plaintiff's equipment to perform services on behalf of Advanced Industrial (*id.* ¶¶ 29–31, at 9).  Plaintiff claims to have suffered losses in excess of $450,000 in sales as well as other financial losses.  *Id.* ¶ 23, at 6.  Defendants deny the allegations, and the individual Defendants have filed a counterclaim for unpaid wages and penalties under La. Rev. Stat. § 23:631 (ECF No. 22, ¶ 13, at 12), alleging they are owed approximately $20,000 in unpaid expenses and $8,386.55 in unpaid commissions.  *Id.* ¶¶ 10, 12, at 11.

    A.    **<u>Subpoenas Duces Tecum</u>**

In the course of discovery, Plaintiff issued Subpoenas Duces Tecum to 10 third parties[1] seeking 13 categories of information:

1. Copies of all Certificates of Insurance provided by Advanced Industrial & Mechanical, LLC (AIM) for any purpose at any time.
2. Copies of all checks paid to AIM for any purpose at any time.
3. Copies of all estimates provided by AIM for any purpose at any time.
4. Copies of all AIM purchase orders for any purposes at any time.
5. Copies of all financial statements provided by AIM for any purpose at any time.
6. Copies of all quotes provided by AIM for any purpose at any time.
7. Copies of all documents showing all jobs or work performed by AIM on any jobs or work for any purpose at any time.
8. Copies of all checks paid to AIM for any purpose at any time.
9. Copies of all transaction reports involving payments to AIM for any purpose at any time.
10. Copies of any communications, including but not limited to correspondence, emails, recordings, etc. received from AIM or sent to AIM for any purpose at any time.
11. Copies of any communications, including but not limited to correspondence, emails, recordings, etc. received from Jeffery Justice or sent to Jeffery Justice for any purpose at any time.
12. Copies of any communications, including but not limited to correspondence, emails, recordings, etc. received from Sandra Justice or sent to Sandra Justice for any purpose at any time.

---

[1] The recipients of the subpoenas duces tecum are Babcock & Wilcox, Bachman Industries, Bear Island Paper WB, LLC, Dominion Altavista, Dominion Energy Virginia, DS Smith North America Recycling, Durr Universal, Hydrocarbon Engineering, Virginia Electric & Power Company, and Clyde Bergmann Power Group Americas, Inc. ECF No. 26-2, at 2, 7, 12, 17, 22, 27, 32, 37, 42, 47.

13. Copies of any communications, including but not limited to correspondence, emails, recordings, etc. received from Lamar Kerry Davis or sent to Lamar Kerry Davis for any purpose at any time.

Defendants do not object to Items 2-4 and 6-9 for the period before their March 8, 2019 termination, but do object to any such documents after their employment with Plaintiff ended on the basis that this case does not involve an alleged non-compete agreement so post-employment activities are not relevant to any claim in this case. ECF No. 26-1, at 4–5. Defendants also contend that the requested documents are confidential and proprietary business and financial information, which is particularly harmful given that Plaintiff is their direct competitor. *Id.* at 5. Likewise, for Items 10-13, Defendants do not object to communications related to work quoted, offered or performed before March 8, 2019, but object to any communications after their termination and further object that the requests seeking communications "for any purpose at any time" as overbroad and not narrowly tailored to seek relevant information. *Id.* at 6. Defendants object to Item 5 for any period of time, including the time during which they were employed by Plaintiff. *Id.* at 5–6.

Plaintiff contends that all of the information sought by the Subpoenas Duces Tecum, including the post-March 8, 2019 information, is relevant to damages and to establish misrepresentations made to Plaintiff's customers to divert their business from Plaintiff to Advanced Industrial. ECF No. 39, at 3–7.

B. **Deposition Notices**

Plaintiff also issued deposition notices for the individual defendants and a Rule 30(b)(6) notice for Advanced Industrial specifying 14 areas of inquiry:

1. The nature of AIM's business;
2. Funding received by AIM;
3. Organizational structure of AIM;
4. Recruiting and hiring practices by AIM;
5. The nature, status, and underlying facts of any litigation to which the company has been a party.

3

6. Jobs or work AIM has undertaken or completed at any time since inception until the present date including any jobs or work before, during, and after Jeffery Justice was employed by Thomas Industrial & Mechanical Constructors, LLC (Thomas Industrial).
7. Any accountants utilized by Advanced Industrial Mechanical, LLC for any purpose whatsoever from 2018 to the present date.
8. Customers of AIM from inception of the business to the present date.
9. Amounts paid for each job AIM completed or performed any work on from inception of the business to the present date.
10. Third parties presented with any Certificates of Liability Insurance at any time for any job or work performed or attempted to be per[]formed by AIM.
11. All income paid to any AIM employee from inception of the business until the present date.
12. All income paid to any third party for work completed on behalf of or for AIM from inception of the business until the present date.
13. Financial statements created by or for AIM from inception of the business until the present date.
14. All quotes provided to any third party by AIM or any employee on behalf of AIM for any employee on behalf of AIM for any work from inception of the business until the present date.

ECF No. 30-2, at 2.

Defendants seek to quash or limit Plaintiff's notices of deposition for defendants Jeffrey Justice, Sandra Justice and Kerry Davis as well as a Rule 30(b)(6) Deposition Notice setting forth 14 areas of inquiry, which Defendants contend are overbroad. ECF No. 30-1, at 2. Defendants ask that this Court to limit the Rule 30(b)(6) areas of inquiry and preclude disclosure of confidential and proprietary business and financial information of Advanced Industrial to Plaintiff as its competitor and to require that Mr. Justice's individual deposition be combined with Advanced Industrial's corporate depositions to avoid unnecessary duplication and waste of time and resources. *Id.* For the same reasons as set forth in their Motion to Quash Subpoenas Duces Tecum, Defendants object to Areas of Inquiry Nos. 2 and 6-14 to the extent same seeks information after their March 8, 2019 termination (ECF No. 30-1, at 5–6) and Areas of Inquiry Nos. 11-13 regarding its financial statements and payments made to employees and third parties are not relevant and

4

"highly confidential business/personal financial information." *Id.* at 6. Defendants also object to Plaintiff's failure to confer, as required by amended Rule 30(b)(6). *Id.* at 7–8.

Plaintiff makes the same arguments in its Opposition to the Motion to Quash Depositions as in its response to the Motion to Quash Subpoenas Duces Tecum. ECF No. 40, at 3–6. With regard to the Rule 30(b)(6) deposition, Plaintiff argues that it satisfied its obligation to confer with defense counsel (*id.* at 6), and it seeks different information from Advanced Industrial and Jeffrey Justice such that combining the depositions would result in confusion. *Id.* at 7–8. Finally, Plaintiff argues that the individual depositions should not be limited for the same reasons that the corporate deposition should not be limited. *Id.* at 8.

## II.   APPLICABLE LAW

### A. The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)(i)–(iii) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[2] This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial. Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[3] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[4] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[5] If relevance is in doubt, the court should be permissive in allowing discovery.[6]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

### B. The Motion to Quash Third Party Subpoenas Duces Tecum

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena that commands a nonparty to whom it is directed to, among other things, attend and testify in a deposition at a

---

[2] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[3] *Id.* n.5 (citation and quotation omitted).
[4] *Id.* (citations omitted).
[5] *Dotson v. Edmonson*, No. CV 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[6] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).

specified time and place.  Third-party subpoenas are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26.[7]  Rule 45 also provides additional protections when subpoenas duces tecum are issued to non-parties.  Specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3).  Generally, modification of a subpoena is preferable to quashing it outright.[8]  "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45."[9]

Absent a personal right or privilege with respect to the subpoenaed materials, a party generally does not have standing to quash a subpoena duces tecum issued to a third party because the party is not in possession of the materials subpoenaed.[10]  Further, a party "cannot challenge a Rule 45 subpoena directed to a third party on the basis that . . . the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can

---

[7] *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999), *aff'd,* 209 F.3d 719 (5th Cir. 2000).
[8] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Tiberi v. CIGNA, Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994); *see also Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("[M]odification of a subpoena is generally preferred to outright quashing . . . .").
[9] *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016).
[10] *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Weatherly v. State Farm Fire & Cas. Ins. Co.,* No. 07-4371-EEF-SS, 2009 WL 1507353, at *2 (E.D. La. May 28, 2009) (holding that defendant did not have standing to challenge the subpoena where it had no privilege over the documents).

object and seek to quash a Rule 45 subpoena on those grounds."[11] The person filing the motion to quash has the burden of proof to demonstrate that compliance would impose undue burden or expense.[12]

To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[13] "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation."[14] "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."[15]

C. **Standard for Protective Order**

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause" exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order.[16] The party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[17] In determining good cause, the

---

[11] *Salmon v. Waffle House, Inc*., No. 19-1349, 2020 WL 6708382, at *2 (E.D. La. Nov. 16, 2020) (citing *Frazier v. RadioShack Corp*., No. 10-855-BAJ-CN, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012)).
[12] *See Wiwa*, 392 F.3d at 818; *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (finding party resisting discovery must show why each discovery request is not relevant or otherwise objectionable).
[13] *Wiwa*, 392 F.3d at 818 (internal citations omitted).
[14] *Id.* (citation omitted).
[15] *Id*. (citation omitted).
[16] *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994).
[17] *E.E.O.C. v. BDO USA, L.L.P.,* 876 F.3d 690, 698 (5th Cir. 2017) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).

court must balance the risk of injury without the protective order and the requesting party's need for information.[18]

Rule 26 offers a variety of potential options that the court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential commercial information not be revealed or be revealed in only a certain way. Fed. R. Civ. P. 26(c)(1)(D), (G). The Federal Rules of Civil Procedure do not expressly define the terms "trade secret" or "confidential commercial information" as used in Rule 26(c). Nonetheless, courts have defined these terms as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."[19]

The trial court enjoys wide discretion in setting the parameters of a protective order.[20] "As a general proposition, a district court [may] exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion."[21] "There are essentially three types of protective orders in terms of the amount of information covered. The narrowest is a protective order covering specific, identified information."[22] Before a court issues a "narrow" protective order, it first reviews the material to be designated confidential before issuing the order, so it is clear in that case that "good cause" for the order exists.[23] On the other end of the spectrum

---

[18] *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004).
[19] *Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381, 388 (E.D. La. 2015) (citations omitted).
[20] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").
[21] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citation omitted).
[22] *Blanchard & Co., Inc.*, 2004 WL 737485, at *5 (quoting *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995), *overruled on other grounds by S.E.C. v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001)).
[23] *See* 8 Charles Alan Wright, et al., Federal Practice & Procedure § 2044.1 (2d ed. 2008) (discussing "umbrella" orders entered on stipulation in advance of discovery and that apply to all materials deemed confidential by the producing party).

is the so-called "umbrella" protective order, which predesignates all discovery as protected,[24] and does not require a specific showing of good faith before the designation.[25] The third type is the "blanket" protective order, which permits either party to deem confidential any documents he or she believes in good faith contain confidential information.[26]

In instances involving discovery of a parties' commercially valuable information to a competitor, courts will employ a protective order with a dual tier designation system. "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to outside attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party."[27] To protect against any predatory practices, while still recognizing the broad scope of discovery in a federal action, courts often require entry of a protective order that limits access to certain documents on an "Attorneys' Eyes Only" basis and restricts use of the information to the present litigation only.[28]

### D. Rule 30(b)(6)

The Fifth Circuit has explained that the purpose of Rule 30(b)(6) is to streamline the discovery process by allowing for a specialized form of deposition.[29] Rule 30(b)(6) gives the corporation being deposed "more control by allowing it to designate and prepare a witness to

---

[24] *Id.*
[25] *Id.*
[26] *See id.*
[27] *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.,* No. 97-3012, 1998 WL 186728, at *2 (E.D. La. Apr. 17, 1998) (citing cases). "[D]isclosure to clients may be prohibited where, for example, the information has commercial value and the parties are competitors; alternatively, the order may (1) limit disclosure to named individuals not involved in the relevant corporate activity, (2) create a special class of highly confidential documents that only attorneys and non-client experts may view . . . and (4) require individual undertakings by those receiving such information not to use it." MANUAL FOR COMPLEX LITIGATION (Third) § 21.432 n. 146 (1995).
[28] *Blanchard & Co.*, 2004 WL 737485, at *10 (citing *Drexel Heritage Furnishings Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 260 (M.D.N.C. 2001); *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 82–83 (S.D. Oh. 1981)).
[29] *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008) (citing *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993)).

testify on [its] behalf."[30] Further, it alleviates the opposing party from "having to play a frustrating game of blind man's bluff in naming the appropriate corporate officer to be deposed or from being bandied from pillar to post by deposition witnesses who disclaim personal knowledge on topics with which others in the corporation are familiar."[31]

### III.  ANALYSIS

Contrary to Defendants' contention, the mere fact that this case does not involve an alleged non-compete violation does not render all post-Marsh 8, 2019 information irrelevant to the claims or defenses in this case.  To the contrary, as argued by Plaintiff, post-March 8, 2019 information is relevant to Plaintiff's claimed damages insofar as Plaintiff contends it lost customers to Advanced Industrial due to Defendants' misconduct, which loss of customers continued after their March 8, 2019 termination but would not have occurred absent their earlier misconduct.  The need for certain post-termination information, however, does not render *all* of the post-termination information sought by Plaintiff relevant to the claims or defenses in this case.

Considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, it is improper to quash either the Subpoenas Duces Tecum or the deposition notices.  That said, pursuant to Rule 26(b)(2)(C)(i), the Court may limit the frequency or extent of discovery when the discovery is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive.  Further, the Court agrees that Plaintiff seeks documents and information that would qualify as confidential or proprietary business and financial information of Defendants through other parties, and that disclosure of same

---

[30] *Id.* (citing *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C.1996)).
[31] *Id.* (citing *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 432–33 (5th Cir. 2006)).

would be particularly harmful in this case given that Plaintiff is Defendant's direct competitor. However, Rule 26 provides other avenues to protect Defendants' interests short of precluding discovery entirely (such as a protective order limiting to this litigation any use of documents produced during discovery and restricting particularly sensitive documents to attorneys' eyes only) given its relevance and importance to the information in this case.

Consistent with the preference for modification rather than quashing outright and the availability of other measures to protect Defendants' interests, the Court will modify the subpoenas as follows:

- Subpoena duces tecum Nos. 1, 3, 5, and 6 must be produced through March 8, 2019.

- Subpoena duces tecum Nos. 2, 4, and 7 must be produced through present.

- Subpoena duces tecum Nos. 8 and 9 are duplicative of No. 2 and therefore stricken.

- Subpoena duces tecum Item Nos. 10, 11, 12 and 13 are overly broad and, as drafted, seek information that has no relevance to any claim or defense and is not proportional to the needs of this case. These requests are limited to production of any communications regarding Advanced Industrial's performance, or efforts to perform (including bids, quotes or estimates) work or services similar in nature to that performed for the relevant party through March 8, 2019.

The areas of inquiry set forth in the Rule 30(b)(6) deposition notice are likewise modified:

- Areas of inquiry Nos. 2, 10, 13, and 14 are limited to the period ending on March 8, 2019.

- Areas of inquiry No. 6, 8, and 9 are limited to require discussion of all jobs or work undertaken or completed by Advanced Industrial prior to March 8, 2019, as well as any jobs or work undertaken or completed for customers or former customers of Thomas Industrial from March 8, 2019 through present.

- Areas of inquiry Nos. 5, 11, and 12 do not appear to seek information that would be relevant to any claim or defense in this case and are therefore stricken.

Further, the parties shall negotiate the terms and file a Joint Motion for Protective Order providing for the designation of materials produced in litigation, including those produced by third parties,

as "confidential" or "highly confidential" and limiting the use of any confidential or highly confidential information to use in prosecuting or defending this litigation only.

Although parties regularly combine an individual's deposition with the Rule 30(b)(6) deposition for which that same individual is the corporate designee, the Federal Rules of Civil Procedure do not require a party to combine those depositions. In this case, Plaintiff argues that the depositions will address different matters and objects to proceeding with the personal and corporate depositions simultaneously. If Plaintiff chooses to use two of its ten depositions by proceeding separately with regard to Advanced Industrial's Rule 30(b)(6) deposition and Mr. Justice's individual deposition, that is its choice. Should the depositions become unreasonably cumulative or duplicative, Defendants may seek relief pursuant to Rule 26(b)(2)(C)(i).

## IV. **CONCLUSION**

Accordingly, for the foregoing reasons, Defendants' Motions to Quash (ECF Nos. 26 and 30) are GRANTED IN PART AND DENIED IN PART as stated herein.

New Orleans, Louisiana, this __20th__ day of April, 2021.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE